DETROIT BOARD OF EDUCATION v PARKS
ABOOD v DETROIT BOARD OF EDUCATION
WARCZAK v DETROIT BOARD OF EDUCATION
KYES v DETROIT BOARD OF EDUCATION

Docket Nos. 46812, 78-3515, 78-3516, 78-3517. Submitted December 11, 1979, at Detroit.—Decided June 3, 1980. Leave to appeal applied for.

In 1969, Christine Warczak and others brought suit against the Detroit Board of Education (board), the Detroit Federation of Teachers (union) and others in the Wayne Circuit Court seeking a declaration that an agency shop clause in the collective bargaining agreement between the union and the board for the years 1969-1971 was contrary to the United States Constitution and the Constitution and laws of the State of Michigan. The agency shop clause required, as a condition of employment, that nonmembers of the union pay to the union an agency shop fee for the negotiation and administration of the contract in an amount equal to the dues paid by union members. The contract provided for dismissal for noncompliance. The *Warczak* suit alleged that a substantial part of the agency shop fees required of nonmembers were being used for "activities and programs which are economic, political, professional, scientific and religious" in purpose rather than collective bargaining. The court, Charles Kaufman, J., granted summary judgment in 1970 for defendants, holding that the agency shop clause was valid and did not contravene constitutional or statutory law. The Su-

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments § 406 *et seq.*

[2] 46 Am Jur 2d, Judgments § 417.

[3] 48A Am Jur 2d, Labor and Labor Relations §§ 1790, 1791.
  68 Am Jur 2d, Schools §§ 131, 168, 183.

[4, 5, 7] 68 Am Jur 2d, Schools §§ 149, 151.

[5] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*

[6, 7] 16A Am Jur 2d, Constitutional Law §§ 580, 804 *et seq.*

[7, 8] 16A Am Jur 2d, Constitutional Law §§ 583, 584.
  63 Am Jur 2d, Public Officers and Employees § 209.
  Termination of public employment: right to hearing under due process clause of Fifth or Fourteenth Amendment—Supreme Court cases. 48 L Ed 2d 996.

[9] 68 Am Jur 2d, Schools §§ 210, 212.

preme Court vacated the judgment and remanded for further proceedings. 329 Mich 755 (1972).

In 1970, D. Louis Abood and others brought an action against the board, the union and certain individuals in the Wayne Circuit Court seeking to enjoin the enforcement of the agency shop clause. The *Abood* case was consolidated with the *Warczak* case on remand. The Legislature amended the public employment relations act (PERA) to specifically allow agency shop clauses in collective bargaining agreements with a public employer. Judge Kaufman granted summary judgment for defendants in 1973, restating his holding in the prior judgment in *Warczak* and holding that the PERA authorized agency shop clauses retroactively and prospectively. Plaintiffs in *Warczak* and *Abood* appealed. The Court of Appeals held that the PERA did not authorize agency shop clauses retroactively, that agency shop clauses were constitutional but that a nonmember employee could not be compelled to pay for non-collective-bargaining activities. The Court of Appeals also held that, inasmuch as plaintiffs had failed to list the objectionable activities with specificity, they failed to state a cause of action on that issue. The Michigan Supreme Court declined to review and the plaintiffs petitioned the United States Supreme Court for certiorari. The United States Supreme Court held that the agency shop clause is constitutional insofar as fees are used for collective bargaining purposes but unconstitutional to the extent it compels nonmembers to support other political and ideological activities of which they do not approve. The Court held that plaintiffs had adequately stated a cause of action as to the objectionable activities, vacated the Court of Appeals decision and remanded to the circuit court. *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977).

While the appeal was pending in the United States Supreme Court, Alberta M. Kyes and Harold L. Simons brought an action in the Wayne Circuit Court against the board and the union for a declaration that the agency shop clause is void and for injunctive relief. Upon remand from the United States Supreme Court, *Abood* and *Warczak* were consolidated with *Kyes.* In March 1978, on defendant's motion, Anne B. Parks was dismissed as a plaintiff in *Warczak* for failure to pay the agency shop fee. Defendants filed a "motion for Partial Accelerated and Summary Judgment of Dismissal, On Remand, *Nunc Pro Tunc".* Judge Kaufman issued an order granting defendants' motion and holding that: 1) the 1973 amendment to the PERA prospectively authorized agency shop clauses; 2) the agency shop clauses contained in the agreements between the

board and the union were valid and of full force; 3) the agency shop clause does not contravene constitutional or statutory law; and 4) the tenure act is inapplicable, procedurally and substantively, to termination of teachers for noncompliance with an agency shop clause. The court retained jurisdiction over the issues of whether and what portion of the agency shop fees had been used for constitutionally objectionable purposes and whether the clause was enforced prior to 1973, when it was authorized. It also stayed the circuit court proceedings pending exhaustion of internal union procedures for refund of the fees. Plaintiffs appeal the 1978 grant of partial summary judgment.

Following her dismissal as a party in *Warczak*, Miss Parks was discharged from employment by the board. She appealed her dismissal to the State Tenure Commission, alleging that the teacher tenure act permits discharge of a tenured teacher only for "reasonable and just cause", that a noncompliance with an agency shop clause is not reasonable and just cause and that, in any event, she should not have been discharged without compliance with the notice and hearing procedures established in the act. The tenure commission ruled that Miss Parks should be reinstated with back pay for the board's failure to comply with the procedures. The board and the union appealed to the Wayne Circuit Court, which reversed the commission by summary judgment, Charles Kaufman, J. Parks appeals. The cases were consolidated for consideration on appeal. *Held:*

1. The 1973 and 1978 summary judgments in *Abood* as to the applicability of the substantive and procedural provisions of the tenure act to discharge of a teacher for noncompliance with an agency shop clause are not res judicata in *Parks*. There must be identity as to the matter in issue for a former judgment to be res judicata in a later cause of action. The "matter in issue" is that matter upon which the plaintiff proceeds by his action and which the defendant controverts by his pleadings. The clauses involved in *Abood* incorporated the procedural aspects of the tenure act by their terms. Therefore, the issues are not identical.

2. A tenured teacher may be discharged for failure to pay agency shop fees to the exclusive collective bargaining agent pursuant to an agency shop contract provision regardless of the "reasonable and just cause" requirement or other procedural protections of the teacher tenure act.

3. A tenured teacher is entitled to a hearing before his employer, at which it is determined whether he is a violator of

the agency shop clause, prior to being dismissed for failure to pay agency shop fees to the exclusive bargaining agent, as required by an agency shop clause in his employment contract.

4. A tenured teacher who was denied due process in a dismissal otherwise justified on the facts is not entitled to reinstatement or back pay. Therefore, Miss Parks is not entitled to reinstatement or back pay.

Affirmed and remanded for further proceedings.

1. JUDGMENTS — RES JUDICATA — MATTER IN ISSUE.

There must be identity as to the matter in issue for a former judgment to be res judicata in a later cause of action; the "matter in issue" is that matter upon which the plaintiff proceeds by his action and which the defendant controverts by his pleadings.

2. JUDGMENTS — RES JUDICATA.

Judgments are res judicata only as to matters in issue or that could have been put into issue in the former action.

3. SCHOOLS — TEACHER TENURE ACT — AGENCY SHOP — DISMISSAL FOR NONPAYMENT OF FEES.

A tenured teacher may be discharged for failure to pay agency shop fees to the exclusive collective bargaining agent pursuant to an agency shop contract provision regardless of the "reasonable and just cause" requirement or other procedural protections of the teacher tenure act (MCL 38.71 *et seq.;* MSA 15.1971 *et seq.*).

4. SCHOOLS — TEACHER TENURE ACT — LEGISLATIVE PURPOSE.

The teacher tenure act was primarily intended to protect teachers from arbitrary and capricious dismissal by the local school board.

5. LABOR RELATIONS — SCHOOLS — PUBLIC EMPLOYMENT RELATIONS ACT — TEACHER TENURE ACT.

The public employment relations act has been consistently construed as the dominant law regulating public employee labor relations and must therefore supersede any other law in conflict with it, including the teacher tenure act (MCL 423.201 *et seq.,* 38.71 *et seq.;* MSA 17.455[1] *et seq.,* 15.1971 *et seq.*).

6. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY RIGHT.

The 14th Amendment requires that procedural due process— notice and opportunity to be heard—must be afforded to one who is threatened with deprivation of a property right.

7. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY INTERESTS —
   TENURED TEACHERS — STATUTES.

> Property interests are created and their dimensions are defined
> by existing rules or understandings which secure certain bene-
> fits and which support claims of entitlement to those benefits
> that stem from an independent source such as state law;
> property interests are subject to due process protection; a
> tenured teacher has a protected "property" interest in his
> employment by virtue of the tenure act (MCL 38.91; MSA
> 15.1991).

8. SCHOOLS — TENURED TEACHERS — AGENCY SHOP — DISMISSAL FOR
   NONPAYMENT OF FEES — HEARING.

> A tenured teacher is entitled to a hearing before his employer, at
> which it is determined whether he is a violator of the agency
> shop clause, prior to being dismissed for failure to pay agency
> shop fees to the exclusive bargaining agent, as required by an
> agency shop clause in a union contract; however, a tenured
> teacher so dismissed without a hearing is not entitled to a
> hearing where the dismissal has been appealed and he admits
> not paying the agency shop fees, rendering a situation where
> there is no factual dispute.

9. SCHOOLS — TENURED TEACHERS — DISMISSAL — DUE PROCESS —
   REINSTATEMENT — BACK PAY.

> A tenured teacher who was denied due process in a dismissal
> otherwise justified on the facts is not entitled to reinstatement
> or back pay.

*Keller, Thoma, Schwarze & Schwarze, P.C.* (by
*David E. Kempner),* and the National Right to
Work Legal Defense Foundation, Inc. (by *Raymond
J. LaJeunesse, Jr.),* for plaintiffs in *Abood, Warc-
zak* and *Kyes* and for defendant, Anne B. Parks, in
*Parks.*

*Marston, Sachs, Nunn, Kates, Kadushin &
O'Hare* (by *Theodore Sachs* and *Mary Ellen Gu-
rewitz),* for defendant in *Abood, Warczak* and *Kyes*
and for the Detroit Board of Education and the
Detroit Federation of Teachers in *Parks.*

Before: M. J. KELLY, P.J., and M. F. CAVANAGH and P. C. ELLIOTT,* JJ.

P. C. ELLIOTT, J.

### Statement of Facts

Respondent-appellant, Anne B. Parks, has been a teacher in the Detroit Public Schools since 1935. She is not a member of the designated bargaining agent for the teachers, the Detroit Federation of Teachers, Local 231, AFT, AFL-CIO (The DFT).[1] Beginning with the contract negotiated between appellees herein, the DFT and the Detroit Board of Education (the Board) for the years from 1969-1971, an "agency shop clause" was included in the agreement requiring nonmembers of the union to pay service fees equal to the dues paid by union members.[2] Parks paid this service fee, under protest, for the year 1973-1974, but has since refused to pay. In March of 1978 she was discharged from her position by the Board at the request of the DFT. She appealed her discharge to the State Tenure Commission, contending that the provisions of the Michigan teacher tenure act, MCL

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] An extensive statement of the facts of the *Abood* case is appended to this opinion as footnote 24.

[2] The clause was to be effective January 1st of 1970. It required all employees, within 60 days of hire or its effective date, to either join the union and pay union dues or pay a monthly service fee to the union each month in an amount equal to regular union dues, "as a condition of employment". The clause further provided that, upon notification by the union of an employee's failure to comply, the Board "shall immediately notify said employee that his services shall be discontinued * * *", and that the Board "shall follow the dismissal procedure of the Michigan Tenure Act as applicable". This clause has remained substantially the same to the present time, except that more extensive references to the tenure act were included until 1972 or 1973 (see footnote 9, *infra*), and beginning with the 1977-1979 contract, all references to the procedures of the tenure act were deleted.

38.71 *et seq.;* MSA 15.1971 *et seq.,* prohibit the discharge of a tenured teacher merely for noncompliance with an agency shop clause ("reasonable and just cause" is the standard, see section II, *infra);* and that, in any event, she should not have been discharged without compliance with the notice and hearing procedures established by the act.[3] In May of 1979, the tenure commission ruled that Parks should be reinstated with back pay because of the Board's failure to follow those procedures.[4] The Board and the DFT appealed the commission's decision to the Wayne County Circuit Court, which reversed the commission by a summary judgment entered August 3, 1979.[5] Parks

[3] MCL 38.102; MSA 15.2002 requires the Board to furnish the teacher with a written statement of the charges, including the teacher's right to a hearing to take place not less than 30 or more than 45 days after such charges are furnished. Parks apparently received a letter from the Board on December 29, 1977, notifying her that she would be discharged 60 days from the next Board meeting unless the fees were paid. On January 10, 1978, the Board voted to terminate Parks's employment effective March 11, 1978, and on January 31, 1978, Parks received a letter notifying her of that decision.

[4] The tenure commission did not explicitly reach this issue; but it appears that it included within its definition of the "procedures" which must be followed under the tenure act the requirement that the Board show that failure to pay agency shop fees constitutes "reasonable and just cause" for dismissal. The decision of the commission refers with approval to a prior commission decision of *Jackson v Swartz Creek Community Schools* (75-12), app'd No. 78-290AA Genesee County Circuit Court, which was decided largely upon that ground; and it principally relies upon MCL 38.172; MSA 15.2054 of the tenure act which states:

"Sec. 2. No teacher may waive any rights and privileges under this act in any contract or agreement made with a controlling board. In the event that any section or sections of a contract or agreement entered into between a teacher and a controlling board make continuance of employment of such teacher contingent upon certain conditions which may be interpreted as contrary to the reasonable and just cause for dismissals, provided by this act, such section or sections of a contract or agreement shall be invalid and of no effect in relation to determination of continuance of employment of such teacher."

It may be that the commission intended to reserve this issue for consideration *after* the tenure act procedures for dismissal of Mrs. Parks were followed *after* her reinstatement pursuant to its decision.

[5] Judge Kaufman, who decided the *Abood* cases consolidated herein,

now appeals that reversal to this Court. Several issues are raised for our consideration. We state them at the outset with our conclusions on each.

1. Whether the 1973 and/or the 1978 summary judgments issued in *Abood* are res judicata in *Parks* as to the applicability, procedurally and substantively, of the tenure act to discharge of a teacher for noncompliance with an agency shop clause.

We conclude that they are not.

2. Whether a tenured teacher may be discharged for failure to pay agency shop fees regardless of the "reasonable and just cause" requirement and/or other procedural protections of the teacher tenure act.

We hold that discharge of a teacher for noncompliance with an agency shop clause is permissible, without regard to the tenure act.

3. Whether a teacher may be discharged for failure to pay agency shop fees without a hearing, and whether such hearing, if any, should be before or after discharge.

We hold that procedural due process requires notice and an opportunity to be heard before a tenured teacher may be dismissed under an agency shop clause.

4. Whether Parks was entitled to reinstatement, either with or without back pay.

---

also issued this order which held: that the tenure act is inapplicable, procedurally and substantively, to termination of teachers for noncompliance with an agency shop clause; that the tenure commission was without jurisdiction in the appeal of Parks from her discharge; that the August, 1978, and December, 1973, summary judgments issued in the *Abood* case were res judicata on the issue of the applicability of the tenure act to discharges for noncompliance with an agency shop clause; that the discharge of Parks was not in contravention of the tenure act; and that the Board was not required to follow the procedural steps of the tenure act requiring a hearing before discharging Mrs. Parks.

We hold that neither reinstatement nor back pay are required in this case.

I

*Should The 1973 and/or 1978 Summary Judgments In* Abood *Have Res Judicata Effect In* Parks?

"The first essential of the rule of *res judicata* is the identity of the matter in issue. The 'matter in issue' is defined to be 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleadings'." *McCormick v Hartman,* 306 Mich 346, 351; 10 NW2d 910 (1943), quoting *Leroy v Collins,* 165 Mich 380, 381; 130 NW 635 (1911).

The complaints filed in *Warczak, Kyes* and *Abood* all alleged generally that the agency shop clause entered into by the Board and the DFT was "contrary to" the Michigan tenure act, among other statutes, and the answers filed by defendants denied that allegation without further explanation. The lower court records do not reveal that any specific findings were made by the court with regard to the applicability of the "reasonable and just cause" requirement or the dismissal procedures of the tenure act before the 1973 motion for summary judgment was granted.[6] Both the 1973 and 1978 judgments state that the agency shop clause does not contravene the tenure act, a hold-

---

[6] In its opinion granting the 1973 motion, the circuit court concluded that the only, and dispositive, issue before it was whether or not the 1973 amendment to the PERA authorizing agency shop agreements could be applied retroactively. The court concluded that it was retroactive and therefore granted summary judgment to the defendants. The order issued pursuant to this opinion included, however, the findings made by the court in its 1970 order granting the defendants summary judgment to the effect that the clause did not "contravene" any law, including the tenure act. (See footnote 24, *infra.*)

ing which does not necessarily include the finding that the tenure act is "inapplicable procedurally and substantively to, * * * termination of teachers for non-compliance with [an agency shop clause]".[7]

" '(It) is immaterial whether the point was actually litigated in the first suit or not, if its determination was necessarily included in the judgment'." *Curry v Detroit,* 394 Mich 327, 332, fn 7; 231 NW2d 57 (1975), quoting *Barker v Cleveland,* 19 Mich 230, 235-236 (1869).

The 1973 and 1978 judgments also both contain the holding that the agency shop clause at issue here "is valid and of full force and effect according to its terms".[8] The agency shop clause has, since it was first included in the collective bargaining agreement in 1969, authorized the dismissal of any teacher not in compliance with it. This does not, however, of itself negate a requirement that the tenure act be followed when the teacher threatened with dismissal is a tenured one. In fact, until 1977, the clause itself required the Board to follow the dismissal procedures of the tenure act "as applicable". (See footnote 2, *supra.)*

The 1978 summary judgment contains a somewhat different—and broader—holding: that the tenure act is *inapplicable* to dismissals under an

[7] This holding was included for the first time in the August, 1978, order granting summary judgment. (See footnote 24, *infra.)* Defendants had requested a "nunc pro tunc" order, reiterating Judge Kaufman's prior holdings in the case, in 1970 and 1973. In his opinion stated on the record in July, 1978, Judge Kaufman said that the order was not "nunc pro tunc", but was more in the nature of an amendment of prior orders and that he believed that any discharge pursuant to an agency shop clause did not have to be "through" the tenure act. This was the only reference made to the "applicability" of the tenure act, and the fact that the agency shop clause had at that time been amended to delete reference to the procedures of the tenure act was not noted or discussed by the court.

[8] The 1978 judgment states that all the agency shop clauses in effect during this case since 1973 are valid. (See footnote 24, *infra.)*

agency shop clause, *both procedurally and substantively.* It is this portion of the judgment which was given res judicata effect and upon which the circuit court based its conclusion that the tenure commission was without jurisdiction in *Parks.*

Appellees contend that this holding has been the "law of the case" in *Abood* since the summary judgment granted by the circuit court in 1970 in *Warczak,* and was merely restated by the judge in 1978. In his opinion granting the 1970 motion, Judge Kaufman did specifically consider and pass upon the question of whether the "reasonable and just cause" requirement of the tenure act applies to the dismissal of a teacher for nonpayment of agency shop fees. The clause in effect at that time provided that nonpayment of the fees was to be considered reasonable and just cause under the tenure act, and Judge Kaufman concluded that that clause was "valid and of full force and effect according to its terms".[9] In so holding, however, he relied heavily on the fact that adherence to the procedural protections of the tenure act was required by the clause itself.[10] This requirement was

_____

[9] That portion of the clause read as follows:

"The Board shall follow the dismissal procedures of the Michigan Tenure Act as applicable. The refusal of a teacher to contribute fairly to the costs of negotiation and administration of this and subsequent agreements is recognized as just and reasonable cause for termination of employment under the Michigan Tenure Act. However, if at the end of the semester, a teacher, or teachers, receiving the termination notice shall then be engaged in pursuing any legal remedies contesting the discharge under this provision before the Michigan Tenure Commission, or a court of competent jurisdiction, such teacher's service shall not be terminated until such time as such teacher or teachers have either obtained a final decision as to the validity or legality of such discharge, or such teacher or teachers have ceased to pursue the legal remedies available to them by not making a timely appeal of any decision rendered in said matter by the Tenure Commission, or a court of competent jurisdiction."

This language, except the first sentence quoted, was deleted in the 1972-1973 contract year.

[10] The court dealt with the issue as follows:

"Finally, it is necessary to determine whether the agency shop

not deleted until 1977. It is therefore clear that the question of whether the tenure act is *procedurally* applicable to a dismissal under the agency shop clause was never properly before the circuit court for decision, nor was it necessarily decided by its holdings on other issues. This portion of the holding contained in the 1978 summary judgment in *Abood* cannot, therefore, be given res judicata effect in *Parks.*

The circuit court did consider the effect of the *substantive* requirement (reasonable and just cause) of the tenure act on agency shop clause dismissals at least once—prior to granting the 1970 motion for summary judgment. The holding of the court as expressed in its opinion seems to be that the "reasonable and just cause" requirement does not *prevent* a teacher's dismissal for failure to pay agency shop fees. The language of the opinion leaves unclear whether or not a formal finding of reasonable and just cause at a tenure act hearing would still be required. (See footnote 10, *supra.)*

This distinction between the "procedural" and "substantive" aspects of the tenure act was also blurred by the tenure commission in its decision and order in *Parks.* Though the stated ground of its decision to reinstate Parks was that she was

clause in the agreement is contrary to or prohibited by any state statute. First, plaintiffs call this Court's attention to the Michigan Tenure Act which provides for discharge or demotion of a tenure teacher only for reasonable and just cause. Can this be reconciled with the agency shop clause which requires the dismissal of a teacher for failure to pay the service fee equivalent to the regular union dues? A reading of the contract will reveal that the constitutional safeguards of procedural due process as required by the Michigan Tenure Act be followed. If not against public policy and repugnant to any basic rights of individuals, it is most conceivable that this violation of the collective bargaining contract may justify discharge. The cases are myriad in holding that where the agency shop clause is violated an employee's discharge for violation of the clause was reasonable."

denied the procedural protections of the tenure act in discussing the possible res judicata effect in *Abood,* the commission stated the issue before it as follows:

"In the instant matter, appellant is claiming the Board violated her statutory right to the due process procedures of the Teachers' Tenure Act by failing to provide her with charges, notice and the right to a hearing *in determining whether just and reasonable cause for discharge existed.* In *Abood,* her challenge was directed at the constitutionality of the agency shop clause under which she was required to pay the service fee." (Emphasis added.)[11]

In short, though it had concluded that the agency shop clause was enforceable and did not contravene the tenure act, prior to its 1978 decisions, the circuit court had never held that the tenure act was completely inapplicable to agency shop clause dismissals. No new findings were made prior to its 1978 decision to grant summary judgment, and its order seems to have been primarily intended to summarize the holdings previously made in the case. Because of this and the difficulty in separating the "procedural" and "substantive" aspects of the act, we do not believe that this portion of the court's decision in *Abood* can have res judicata effect in *Parks,* and we address the issue of the applicability of the act on its merits.

II

*May a Tenured Teacher Be Discharged For Failure To Pay Agency Shop Fees Without Regard To The "Reasonable and Just Cause" or Other Procedural Requirements Of The Teacher Tenure Act?*

[11] Michigan State Tenure Commission, Decision and Order, p 7. See also footnote 4, *supra.*

The public employment relations act (PERA) MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* was enacted in 1947. It is titled

"AN ACT to prohibit strikes by certain public employees; to provide review from disciplinary action with respect thereto; to provide for the mediation of grievances and the holding of elections; to declare and protect the rights and privileges of public employees; and to prescribe means of enforcement and penalties for the violation of the provisions of this act."

Section 10 of the act (as amended in 1973) states in part:

"That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative * * * to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative."[12]   MCL 423.210; MSA 17.455(10).

The teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* enacted in 1937 is titled

"AN ACT relative to continuing tenure of office of certificated teachers in public educational institutions; to provide for probationary periods; to regulate discharges or demotions; to provide for resignations and

---

[12] Subsection (2) of § 10 goes on to declare that:

"It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, if such requirement is negotiated with the public employer, that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative by paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative."

leaves of absence; to create a state tenure commission and to prescribe the powers and duties thereof, and to prescribe penalties for violation of the provisions of this act."

The tenure act provides that a tenured teacher may only be discharged for "* * * reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided". MCL 38.101; MSA 15.2001.

The teacher tenure act was primarily intended to protect teachers against "arbitrary and capricious" dismissal by the local school board. *Boyce v Royal Oak Board of Education,* 407 Mich 312, 320; 285 NW2d 196 (1979), *Rehberg v Melvindale Board of Education,* 330 Mich 541, 548; 48 NW2d 142 (1951). The PERA, on the other hand, has been "consistently construed * * * as the dominant law regulating public employee labor relations", *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616, 629; 227 NW2d 736 (1975), and therefore must supersede any other law in conflict with it:

"The supremacy of the provisions of the PERA is predicated on the Constitution (Const 1963, art 4, § 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations." *Crestwood, supra,* 630.

The PERA, and the present agency shop clause at issue here, contemplate that a tenured teacher may be discharged for failure to pay agency shop fees without any finding that such failure constitutes "reasonable and just cause" under the tenure act. The section of the PERA cited above allows payment of agency fees to be made a "condition of

employment", and the agency shop clause included in the various collective bargaining agreements between the Board and the DFT (see footnote 2, *supra)* provides for dismissal of any teacher who fails to pay them.[13] There exists here then, as in *Crestwood,* a direct conflict between the two statutes, so the PERA must prevail.

The United States Supreme Court has previously held that requiring payment of agency shop fees as a condition of employment is constitutionally permissible to the extent that such fees are used for collective bargaining purposes, and it so held in this case. *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). See also, *Railway Employees' Dep't, American Federation of Labor v Hanson,* 351 US 225; 76 S Ct 714; 100 L Ed 1112 (1956), *International Ass'n of Machinists v Street,* 367 US 740; 81 S Ct 1784; 6 L Ed 2d 1141 (1961).

The Legislature of this state has declared that public policy requires the elimination of "free riders" in order to promote stability in labor relations in the public sector, notwithstanding any other law of this state. MCL 423.210; MSA 17.455(10), and footnote 12, *supra.*[14]

The PERA was intended to be the "dominant law regulating public employee labor relations".

---

[13] The fact that the agency shop clause (until 1977) required the Board to follow the dismissal procedure of the Michigan tenure act does not necessarily contemplate compliance with the *substantive* requirement of "reasonable and just cause" which has been interpreted as requiring that a teacher is "unfit to teach", *Beebee v Haslett Public Schools,* 66 Mich App 718, 724; 239 NW2d 724 (1976), *rev'd* 406 Mich 224; 278 NW2d 37 (1979), a finding which does not necessarily follow from a mere failure to pay agency shop fees.

[14] This public policy does not infringe the constitutional rights of public employees. *Abood v Detroit Board of Education,* 60 Mich App 92; 230 NW2d 322 (1975), *rev'd and remanded on other grounds* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977), *reh den* 433 US 915; 97 S Ct 2989; 53 L Ed 2d 1102 (1977).

*Crestwood, supra,* 629 (and cases there cited), *The Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977). It contains a provision specifically allowing a school board and an exclusive bargaining agent to include an agency shop clause requiring payment of the fees as a condition of employment in a collective bargaining agreement. In order to enforce the agency shop requirement, the DFT and the Board have decided that all teachers must comply with it or be subject to discharge.[15] There is a "positive repugnancy" between the provision of the PERA which authorizes this and the provision of the tenure act which prohibits the discharge of a tenured teacher except for reasonable and just cause. *Cf., Council No 23, AFSCME v Recorder's Court Judges,* 399 Mich 1; 248 NW2d 220 (1976). In such a situation, the PERA must supersede the tenure act and authorize an agency shop clause which calls for discharge for noncompliance therewith whether or not there is also "reasonable and just cause" to dismiss under the tenure act.

Unlike § 6 of the PERA,[16] which specifically superseded not only the substantive but also the procedural requirements of the tenure act with regard to teachers who are dismissed for striking, § 10 allows an agency shop agreement as a condition of employment but does not provide procedures for dismissal. In light of the legislative

---

[15] Appellants contend that there are two other methods of enforcing an agency shop clause and that one or the other of them must be resorted to in the case of a tenured teacher. Requiring the Board and/or the DFT to institute a civil suit to recover agency shop fees from all objecting employees is too cumbersome a method of enforcing the declared public policy of this state. Further, it is not clear, as appellants suggest, that MCL 408.477; MSA 17.277(7) authorizes automatic deductions of agency shop fees from the wages of objecting employees. Such deductions would not only raise constitutional problems, but are apparently prohibited by MCL 750.353; MSA 28.585.

[16] MCL 423.206; MSA 17.455(6).

intent that the PERA occupy the field of labor relations in the public sector, however, it would be inappropriate to follow the procedures set forth in the tenure act.

"The teachers' tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. The 1937 Legislature in enacting the teachers' tenure act could not have anticipated collective bargaining or meant to provide for the resolution of labor relations disputes in public employment * * *.
"[The State Tenure Commission's] jurisdiction and administrative expertise is limited to questions traditionally arising under the teachers' tenure act." *Crestwood, supra,* 630. See also *Lamphere Schools, supra,* 124-125.

We do not think it necessary or desirable for the procedures of the tenure act or the jurisdiction of the tenure commission to become operative in an area apparently meant to be pre-empted by the Legislature of this state. We agree with the circuit court's conclusion that the tenure act is inapplicable, procedurally and substantively, to dismissals for noncompliance with an agency shop clause.

### III

*Is a Teacher Terminated For Failure To Pay Agency Shop Fees Entitled To a Hearing, Either Before or After Discharge?*
Our courts have long recognized that the 14th Amendment requires that procedural due process —notice and an opportunity to be heard—must be afforded to one who is threatened with deprivation of a property right.

"Before a person is deprived of a protected interest,

he must be afforded opportunity for some kind of a hearing, 'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event'." *Board of Regents of State Colleges v Roth,* 408 US 564, 570, fn 7; 92 S Ct 2701; 33 L Ed 2d 548 (1972), quoting *Boddie v Connecticut,* 401 US 371, 379; 91 S Ct 780; 28 L Ed 2d 113 (1971).

Not all employment interests are "property" requiring the protections of the 14th Amendment.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it * * *.
  Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v Roth, supra,* 577.

In this case, as in *Roth* and *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972), Parks had a protected "property" interest in her employment which was created by the tenure act.

"After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board * * * and shall not be dismissed or demoted except as specified in this act." MCL 38.91; MSA 15.1991.

Appellees assert that if there was any right to a hearing before Parks's dismissal, the proper forum would be the MERC, pursuant to an unfair labor practices claim under § 16 of the PERA.[17] Aside

----

[17] MCL 423.216; MSA 17.455(16).

from the question of whether the MERC would have jurisdiction over such a claim, since enactment of an agency shop clause is specifically excepted from the list of prohibited practices in § 10 of the PERA, such a procedure would allow the deprivation of important rights without a prior opportunity to be heard and would improperly place the burden of vindicating her rights on appellant. As the *Crestwood* Court noted, any procedures for the discharge of a tenured teacher should, as far as possible, be "consonant with the tenor of the procedures spelled out in the teachers' tenure act" *Crestwood, supra,* 628.

"Furthermore, we find it to be contrary to the legislative intent, as expressed in the tenure act, to permit school boards to summarily dismiss tenure teachers * * *. Such a procedural approach places the burden upon the tenure teacher * * * rather than the present statutory approach which places the burden upon those making charges against the tenure teacher." *Rumph v Wayne Community School Dist,* 31 Mich App 555, 562; 188 NW2d 71 (1971).

Of course, due process does not require a prior hearing in every case of deprivation of a property right.

"When the government seeks to deprive a person of a property right * * * due process requires a 'hearing appropriate to the nature of the case.' *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950), 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' *Boddie v Connecticut,* 401 US 371, 378; 91 S Ct 780; 28 L Ed 2d 113 (1970). 'The types of "liberty" and "property" protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of

interests which it protects may not be required in dealing with another set of interests.' *Arnett v Kennedy,* 416 US 134, 155; 94 S Ct 1633; 40 L Ed 2d 15, 34 (1974). 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' *Cafeteria Workers v McElroy,* 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961).

\* \* \*

" 'We have repeatedly observed that due process requires that a hearing be held "at a meaningful time and in a meaningful manner", *Armstrong v Manzo,* 380 US 545, 552 [85 S Ct 1187; 14 L Ed 2d 62] (1965), but it remains for us to give content to that general principle in this case by balancing the Government's asserted interests against those of the discharged employee.' " *Arnett v Kennedy, supra,* 416 US 134, 212 (Marshall, J., dissenting with Brennan and Douglas, JJ.). *Crestwood,* 633-634.

The Board has a valid interest in maintaining the stability of the union through enforcement of the agency shop clause by discharge. This interest does not, however, outweigh an employee's interest in being protected from wrongful removal from a position in which he or she has a constitutionally protected property right and from the consequent financial deprivation. This is especially so considering the short time required for a hearing to determine whether discharge is authorized under the agency shop clause. The only relevant factual issue at such a hearing, as in a § 6 hearing, will be whether the teacher being discharged was correctly identified as a violator[18] of the agency shop clause. As the "body having general disciplinary authority" *(Crestwood, supra,* 640), and because the relevant facts will no doubt be best known to

[18] There may be some explanation for the failure to pay the agency shop fees such as a belief they were deducted or lost in the mail or other reasonable excuse that is not a willful failure or refusal to pay.

it, the employer—in most cases the local school board—is the most appropriate choice to conduct the hearing.[19]

No appeal should be necessary from whatever determination is made. If the hearing results in discharge of a teacher and she or he alleges that the discharge was for conduct protected by the PERA or that some employer misconduct was otherwise involved, an unfair labor practice charge could be filed with the MERC. *Crestwood, supra,* 633, 640. Or, if the teacher alleges that noncompliance with the agency shop clause was used as a mere subterfuge to circumvent the protections afforded by the tenure act, an appeal to the tenure commission may be proper. *Chester v Harper Woods School Dist,* 87 Mich App 235, 244; 273 NW2d 916 (1978). It seems that the only other possible subject of dispute remaining after the required hearing might be whether or not the correct *portion* of agency shop fees has or has not been paid by a teacher who has objected to use of the fees for any but collective bargaining purposes.[20] In that event, however, resort to the internal procedures established by the DFT for determining the amount of fees due for that purpose would be proper.[21]

[19] It may not be necessary to hold a full-blown hearing before the entire Board. As we have already noted, due process demands only "such procedural protections as the particular situation demands", *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972), quoted in *Wehner v Levi,* 183 US App DC 328; 562 F2d 1276 (1977), where a procedure by which an employee was given notice and an opportunity to explain his conduct in writing and at a meeting with a superior prior to discharge was held to comport with due process.

[20] We note that the PERA provides for circuit court review of the hearing decision made pursuant to § 6 discharges for striking. A similar right might be implied here in the unlikely event that review of the factual determination of nonpayment is sought.

[21] The Supreme Court described the internal union procedure devised by the DFT and the Board in footnote 41 of the *Abood* case, as follows:

Parks, therefore, was entitled to notice and an opportunity to be heard prior to her discharge for failure to pay agency shop fees. In the usual case, this holding would not, as appellees contend, require the Board to indulge in an "idle ceremony" as that phrase has been used in some of the cases involving discharged teachers. This case, unlike *Rehberg v Melvindale Board of Education, supra,* and *Simon v Gibralter School Dist,* 52 Mich App 643; 217 NW2d 891 (1974), involves not merely a variance from strict procedural rules but a complete failure by the Board to afford Parks a hearing at all, before or after her discharge.[22] The agency shop clause itself does now and always has required notice of nonpayment of the fees and Parks received such notice, including notice of the possibility of discharge as a result. It would be pointless, however, to require that the Board now hold a hearing for Parks. She has already appealed her discharge to the tenure commission and we review its decision now. Furthermore, she has submitted an affidavit stating that she has not paid agency shop fees since 1973-1974 and that she paid the fees that year "under protest". There is, therefore, no factual dispute to be resolved at a

"Under the procedure adopted by the Union, as explained in the appellees' brief, a dissenting employee may protest at the beginning of each school year the expenditure of any part of his agency-shop fee for 'activities or causes of a political nature or involving controversial issues of public importance only incidentally related to wages, hours, and conditions of employment.' The employee is then entitled to a pro rata refund of his service charge in accordance with the calculation of the portion of total Union expenses for the specified purposes. The calculation is made in the first instance by the Union, but is subject to review by an impartial board." *Abood v Detroit Board of Education,* 431 US 209, 240, fn 41.

[22] This situation also differs from that presented in *Steeby v Highland Park School Dist,* 56 Mich App 395; 224 NW2d 97 (1974), where teachers are terminated because economic necessity requires a reduction in personnel, because the tenure act provides a remedy in that situation—appointment to the next vacancy.

hearing and we hold that it is not necessary to hold one. See, *e.g., Codd v Velger,* 429 US 624; 97 S Ct 882; 51 L Ed 2d 92 (1977), *Wehner v Levi,* 183 US App DC 328; 562 F2d 1272 (1977).

## IV

*Is Appellant Parks Entitled to Reinstatement And/Or Back Pay?*

We hold today that Parks's discharge was wrongful to the extent that she was denied procedural due process. Our holding also makes it clear, however, that her discharge was authorized by the agency shop clause between the DFT and the Board and was not prohibited or affected by anything in the tenure act.

Reinstatement of Parks is not required under these facts. Reinstatement is the proper relief to be granted a wrongfully discharged employee who later prevails on the merits. *Davis v River Rouge Board of Education,* 406 Mich 486; 280 NW2d 453 (1979). Here, of course, Parks has admitted the grounds for her discharge.[23]

We also do not believe that any award of back pay is either required or appropriate.

"A teacher is entitled to salary during the period of suspension, but the suspension ends when the school board renders a decision.

, * * *

"We do not impute to the Legislature an intent to award salary to a teacher who has not yet prevailed on the merits and whose discharge was vacated on procedural grounds, subject to correction on remand without a rehearing * * *. The awarding of salary to a teacher who has not yet prevailed on the merits and whose

---

[23] Parks may be reinstated, of course, upon payment of the required fees.

discharge was reversed on procedural grounds is at odds with the rule of compensation for actual loss suffered. Moreover, the practice of awarding salary at this stage conflicts with the policy of determination of the amount of back pay until after there has been a definitive ruling on liability. See *Shiffer v Gilbralter Schools* [393 Mich 190; 224 NW2d 255 (1974)] * * *.

* * * If it is ultimately determined that the discharge was wrongful and the plaintiff is reinstated she would then be entitled to an award of back pay." *Pounder v Harper Woods Board of Education,* 402 Mich 91, 93-94; 260 NW2d 287 (1977).

Parks was not suspended pending a decision of the Board on her discharge. She was given ample notice that the Board was considering dismissing her for noncompliance with the agency shop clause. We conclude that she is not entitled to an award of back pay for the time required for her appeal to the tenure commission, the circuit court and this Court.

To summarize, we agree with the conclusions of the circuit court in *Parks,* with the exception of its holding with respect to the res judicata effect of *Abood.* We further hold that a tenured teacher is entitled to a hearing prior to discharge pursuant to the agency shop clause. However, the failure to provide Mrs. Parks with a hearing before her discharge does not entitle her to relief because it is so clear that she deliberately refused to pay the agency shop fees required of her. The August 3, 1979, judgment in *Parks* is therefore affirmed.

In *Abood,*[24] the issue of the court's dismissal of

[24] Parks was originally a plaintiff in *Warczak v Detroit Board of Education,* one of the consolidated appeals herein, which was filed in November of 1969 in the Wayne County Circuit Court. Plaintiffs in that case sought a ruling that the agency shop clause (see footnote 2, *supra),* included for the first time in the collective bargaining agreement for the years 1969-1971, was contrary to various provisions of the United States and Michigan Constitutions and to statutes of the

State of Michigan, including the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* and the teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* The *Warczak* complaint also alleged that a "substantial part" of the agency shop fees required of nonmembers of the DFT were not being used solely for collective bargaining purposes but for "activities and programs which are economic, political, professional, scientific and religious". In January, 1970, Judge Kaufman granted defendants' motion for summary judgment for failure to state a claim. The order stated that the challenged agency shop clause "is valid and of full force and effect according to its terms", and that the clause "does not contravene the Constitution of the United States or of the State of Michigan or the statutes of the State of Michigan", including the PERA and the tenure act. Because of its decision in *Smigel v Southgate Community School Dist,* 388 Mich 531; 202 NW2d 305 (1972), the Supreme Court vacated this judgment and remanded to the circuit court for further proceedings in December of 1972. 389 Mich 755 (1972).

Meanwhile, in 1970, the complaint in *Abood v Detroit Board of Education* was filed and was consolidated with *Warczak* for the remand proceedings. In response to *Smigel,* the Legislature amended § 10 of the PERA specifically to allow a public employer and an exclusive bargaining representative to include an agency shop clause in a collective bargaining agreement. Defendants' renewed motion for summary judgment was granted by Judge Kaufman in December of 1973. This order stated that the 1973 amendment to PERA authorized agency shop clauses, both prospectively and retrospectively, and restated the holdings of the 1970 order. The plaintiffs in *Warczak* and *Abood* appealed the 1973 summary judgment to this Court, asserting error in the circuit court's retroactive application of the PERA amendment and in the finding that the agency shop clause was constitutional. In *Abood v Detroit Board of Education,* 60 Mich App 92; 230 NW2d 322 (1975) this Court reversed the circuit court's holding that the PERA amendment applied retroactively. We also held that the agency shop clause was constitutional but that plaintiffs could not be compelled to pay for non-collective-bargaining activities. However, as plaintiffs had failed to list the objectionable activities with specificity, they had failed to state a cause of action on this issue. When review of this decision was denied by the Michigan Supreme Court, plaintiffs appealed to the United States Supreme Court. While that appeal was pending, the complaint in *Kyes v Detroit Board of Education* was filed. In an opinion issued May 23, 1977, the United States Supreme Court agreed with the Court of Appeals that the agency shop clause is constitutional insofar as fees are used for collective bargaining purposes but unconstitutional to the extent that it compels plaintiffs to support other political or ideological activities of which they do not approve. *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). The Supreme Court held that plaintiffs had adequately stated a cause of action as to these objectionable activities, and the Court of Appeals decision was vacated and remanded for further proceedings upon that issue.

After remand to circuit court in September of 1977, the case was

Parks and Repeta for nonpayment of the fees is moot because Mrs. Parks's case is before us now

consolidated with *Kyes.* Also in September, 1977, plaintiffs moved for an order allowing escrow payments of the agency shop fees. This motion was denied, and no appeal was taken. In February of 1978, the circuit court granted defendants' motion to dismiss Anne Parks and Genevive Repeta as plaintiffs for failure to pay agency shop fees. In March, 1978, Parks was discharged from her employment by the Board for failure to pay the fees, and she appealed her discharge to the State Tenure Commission. Repeta apparently retired at this time. In April, 1978, defendants filed a "Motion for Partial Accelerated and Summary Judgment of Dismissal, On Remand, *Nunc Pro Tunc*", seeking reaffirmance of the circuit court's prior orders of December, 1973, and February, 1978. On August 16, 1978, Judge Kaufman issued an order granting defendants' motion which included the following findings:

1. The 1973 PERA amendment prospectively authorized agency shop clauses;

2. The agency shop clauses contained in the agreements between the Board and the DFT "were valid and of full force and effect according to their terms, effective June 14, 1978";

3. The agency shop clause does not contravene the United States or Michigan Constitution or any statute or the State of Michigan including the PERA and the tenure act, among others;

4. The tenure act is inapplicable, procedurally and substantively, to termination of teachers for noncompliance with an agency shop clause; and

5. Plaintiffs Parks and Repeta are dismissed as parties plaintiff for failure to pay agency shop fees.

The circuit court retained jurisdiction over the issues of whether or what portion of agency shop fees had been used for constitutionally objectionable purposes and whether the agency shop clause was enforced prior to 1973, when it was authorized. However, on the same day, August 16, 1978, Judge Kaufman also issued a stay of the circuit court proceedings pending exhaustion of internal union procedures for refund of the fees and denied plaintiffs' renewed motion for escrow of the fees. Leave to appeal from these orders was applied for and denied by this Court in October of 1978.

Plaintiffs now appeal from the August 16, 1978, order granting partial summary judgment, especially paragraph 4 thereof, which they claim was never a part of the prior judgments of the circuit court and therefore never properly within its subject matter jurisdiction. As this appeal has now been consolidated with the *Parks* appeal and we decide the res judicata effect of *Abood* on *Parks,* we find it unnecessary to address the issue of jurisdiction in *Abood,* as the issue of the applicability of the tenure act was properly before the circuit court in *Parks.* We also find it unnecessary to deal with the issue of whether Parks was properly dismissed as a plaintiff for lack of standing because of her failure to pay the fees. The other issues raised in this case will be discussed and decided in the factual context presented in *Parks.*

and Mrs. Repeta apparently has retired. We therefore did not consider that portion of the judgment. In all other respects the August 16, 1978, judgment in *Abood* is affirmed and the case is remanded for further proceedings pursuant to the court's retention of jurisdiction over certain issues.